LAKE SUPERIOR IRON Co. *et al. v.* BROWN, BONNELL & Co. *et al.*

*(Circuit Court, N. D. Ohio, E. D.*  September 5, 1890.)

1. ABATEMENT OF ACTION—DISSOLUTION OF CORPORATION—REVIVOR.

   Under Rev. St. Ohio, §§ 5679, 5680, which provide that no pending action against a corporation shall abate by its dissolution, and that execution on a judgment obtained in such action may issue against the trustees of the dissolved corporation in its corporate name, a suit in equity in a federal court, wherein the corporation has been declared insolvent, and a receiver appointed to administer its property as a trust fund for the benefit of creditors, need not be revived as against a receiver appointed by a state court, which has dissolved the corporation during the pendency of the proceedings in the federal court.

2. SAME.

   On general principles of equity jurisprudence, a federal circuit court, which has obtained possession of the property of an insolvent corporation in proceedings instituted against it by its creditors, and which has been directed by the United States supreme court to make a distribution of such property among the creditors in a specified manner. does not lose its jurisdiction by the dissolution of the corporation and the appointment of a receiver by a state court; nor do such proceedings in the state court necessitate a revival of the suit in the federal court.

3. JUDICIAL SALES—APPRAISERS—DISINTERESTED FREEHOLDERS.

   Rev. St. Ohio, § 5389, which requires three "disinterested freeholders" to appraise lands before a judicial sale thereof, does not disqualify a distant relative of one of the creditors of a corporation, whose claim represents only a small portion of its aggregate indebtedness, from acting as an appraiser on a judicial sale of its property for the benefit of all its creditors.

4. SAME—PURCHASER'S OPTION TO TAKE ADDITIONAL PROPERTY.

   A judicial sale of the property of a corporation is not rendered invalid by the receiver's announcement at such sale that the purchaser would also have the right, at his election, to take certain land, not covered by the order of sale, and acquired by the receiver during his administration of the corporate property.

5. SAME—INADEQUACY OF PRICE.

   The mere fact that the receiver, on taking possession, inventoried the property at a sum considerably greater than that fixed by the appraisers on a judicial sale thereof eight years afterwards, is not a ground for setting aside the sale for inadequacy of price.

In Equity.

*Henry Crawford,* for exceptions.

*C. C. Baldwin* and *Hine & Clark,* for creditors and purchasers.

*Frank Wing,* for receiver.

RICKS, J.   At the October term, 1889, of the supreme court of the United States, (10 Sup. Ct. Rep. 604,) a decree was entered affirming the decree of this court rendered in this case at the February term, 1886; and on the 26th day of May, 1890, a mandate of said court was received directing this court to enforce its decree.   In pursuance to said direction, an order of sale was issued out of the clerk's office on the 3d day of June, 1890, directing the special master commissioner therein named to appraise, advertise, and sell the property described in the decree and order of sale as upon a judgment at law.   On the 23d day of July, 1890, the master commissioner returned the order of sale, reporting that on the 22d day of July he had sold the said property to William McCreery, Henry Tod, Charles C. Baldwin, and Cecil D. Hine, as trustees for the sum of $700,000, said sum being more than two-thirds of the appraised value thereof.   On the 22d day of August exceptions to the report of

said master were filed by the Leadville Coal Company and Charles S. Worden, on behalf of themselves and such other creditors as might choose to join therein. A motion was also filed on behalf of the purchasers, to confirm said sale. The case is now before the court upon these exceptions and upon the motion to confirm.

The exceptions filed may be briefly stated as follows: (1) Appraisal void because not made on actual view. (2 and 3) Appraisal void because two of the appraisers related to or employed by creditors. (4 and 5) Appraisal void because certain of receiver's contracts for sales and supplies not appraised. (6) Appraisal void for inadequate price. (9) Order of sale void because corporation dissolved by state court, and suit thereby abated, and for other exceptions noted in the opinion.

The exceptions and the objections are stated in inverse order to their importance. It will be well to consider the last exception first, because, if well taken, there will be no need to spend time considering the others. The ninth and last exception is:

"That this action abated on the dissolution of such corporation by judicial decree, and said Taylor, the receiver, who now, under the statute, is vested with the title to all the corporate assets, has not been made a party to this suit in any way."

Postponing, for the time, a consideration of the question whether in an equity suit of this character, after a final decree adjusting all the rights of the parties, a dissolution of a defendant corporation, independent of any statutory provision, would make a revivor necessary, we pass to the consideration of the Ohio statutes prescribing the procedure necessary to dissolve a corporation created by authority of the state. After a careful examination of the several sections of the statute on this subject, it seems clear that this legislation fully saves and excepts from the general effects of dissolution all rights of parties in suits "pending in any court in favor of or against any corporation," and specially provides that no such action " shall be discontinued or abate by the dissolution of the corporation; whether the dissolution occur by the expiration of its charter or otherwise; but all such actions may be prosecuted to final judgment by the creditors, assignees, receivers, or trustees, having the legal charge of the assets of the corporation, in its corporate name."[1] The statute provides still further that final relief by execution shall not be delayed by such dissolution, but that "execution may be had, and satisfaction or performance of the same enforced by the creditors, assignees, receivers, or trustees, having the legal charge of the assets of the dissolved corporation, in the corporate name of the dissolved corporation."[2] Now, if we apply these provisions to the case before us, they relieve the court of all difficulty in speeding the suit to a final decree of confirmation and settlement. The jurisdiction of the court from the time the supplemental bill was filed has proceeded upon the well-settled principle in equity that the property and assets of this insolvent defendant corporation was a trust fund, to be distributed for the benefit of its creditors as their

[1] Rev. St. Ohio, § 5679.          [2] Rev. St. Ohio, § 5680.

rights and equities should be finally determined. In order to adjudicate those rights, the creditors were allowed and required to become parties to this suit. Their claims have been filed, the amounts due them have been determined, and their priorities fixed by final decree. Every person interested in the assets of this insolvent corporation is before the court, and his rights have been fully determined. The court has complete jurisdiction both of the funds and of the parties, and is ready to make distribution of the trust fund; but is now, after seven years of litigation, asked to relinquish jurisdiction, turn the property and funds that have accumulated by judicious management over to another court, and require creditors to renew litigation in another forum. Such an extraordinary abandonment of creditors to such a harsh fate would be justified only by a clear and undoubted want of jurisdiction.

The Ohio statutes, and the general principles controlling equity procedure, furnish abundant reasons for retaining jurisdiction and giving parties final and complete relief in these proceedings. The provisions of the statute quoted make it plain that, after final decree of dissolution in the state court, these proceedings could still have been prosecuted against the defunct corporation in its corporate name, and without revivor, as was done in this case. By the express provision of the statute before quoted, "execution may be had, and satisfaction or performance of the same enforced, * * * in the corporate name of the dissolved corporation." If such unembarrassed relief was provided for enforcing a judgment at law, how much more liberal a construction might be claimed for such a provision when applied to a suit in equity, where the well-established principle controls that the equitable rights of the creditors of a corporation survive its dissolution, although their remedy at law is extinguished. A court of chancery will furnish a remedy to protect and enforce their equitable rights against any assets belonging to the company at the time of its dissolution. At the time the proceeding to procure a decree of dissolution was instituted in the Ohio tribunal, this court had control of all the property of the defendant, and was operating its mills by a receiver. It had adjudged the defendant insolvent, and had reached out its long arms to bring all parties, resident and non-resident, before it, to adjudge their rights to the property and fund it had seized. It had impressed upon the fund and property the character of a trust, and had undertaken to convert them, so as to make an equitable distribution thereof among the beneficiaries entitled to share therein. This afforded a sufficient basis for the equitable jurisdiction claimed. It was, in most respects, in the nature of a proceeding *in rem*, and its jurisdiction of the property and assets was incontestable.

The mandate of the supreme court specifically directed this court to enforce the decree which it had affirmed. This affirmance was made after the decree of dissolution in the state court. Under that mandate, this court had no discretion as to how, or when, or upon what terms, the defendant's property should be sold. We are directed to enforce the decree as affirmed, and in that decree the provisions for its execution are definitely prescribed. We do not assume to modify or annul any

of its provisions, but have undertaken to execute it as literally as possible. The provisions of the Ohio statutes have been carefully considered, not because we hold that our jurisdiction to proceed without revivor can be aided by this statute, for it is well settled that the equity jurisdiction of this court can neither be restricted nor enlarged by state legislation. But, inasmuch as all the authority and rights claimed by the receiver appointed in the state court are conferred by the Ohio statutes, I have carefully considered them, in order to ascertain whether, even under all the power thereby conferred upon said receiver, a revivor as to him was necessary. The saving exceptions made by said statutes, as hereinbefore quoted, make it plain that even under their provisions it was not. The court which decreed dissolution and appointed him did not contemplate that he should assume the right to claim the title to the property or fund. In its decree it expressly directed that he should "not interfere with the possession of the receiver appointed by the federal court of the effects and assets of said corporation." It is therefore clear that, even if we concede to the state statutes all that is claimed, the decree of dissolution of the state court neither ousted this court of its jurisdiction nor made revivor proceedings necessary. Neither under the general equity jurisdiction of this court could such decree of dissolution affect its jurisdiction or make revivor necessary. As before stated, the court had possession and control of this defendant's property and assets as a trust fund, to be converted and distributed to the beneficiaries under said trust. Its jurisdiction thereof had been finally fixed by the supreme court, and the manner in which that trust fund should be converted for distribution had been prescribed, and this court was directed to carry out the decree. We are now asked to disregard this mandate, assume the right to annul its provisions by relinquishing jurisdiction, and transfer the fund and property to a new tribunal, for further litigation. There is no equity in such a claim. The ninth exception is therefore overruled.

The eighth exception involves substantially the same question. The contract therein referred to was not of a nature to affect the rights of the parties thereto, and the decree of dissolution, for the reasons above given, did not supersede or make invalid any decree or any order in the proceedings in this case. Said exception is therefore overruled.

The remaining exceptions are based upon objections to the sale because one of the appraisers, Caleb B. Wick, was related to some of the creditors, and because another appraiser, James Neilson, was at the time in the employ of C. H. Andrews, one of the creditors, and a party to this suit; and that, because of such relationship, these appraisers were not "disinterested freeholders," as prescribed by the Ohio statutes,[1] and because of such want of proper qualification this sale should be set aside.

There is nothing in the affidavit in support of these exceptions, or in anything appearing on the record in this case, to show that these appraisers were not in every other respect well qualified and fitted for their

[1]Rev. St. Ohio, § 5389.

duty. The court is entirely satisfied that the property was appraised at a fair valuation, and that, therefore, the appraisers discharged their duty intelligently and impartially. It appears from affidavits in the case that Caleb B. Wick, one of the appraisers, was a nephew of Hugh B. Wick, who died in 1880, and a nephew of Paul Wick, who died in June, 1890. The heirs of said two uncles, together with John C. Wick, a cousin of said appraiser, comprise the firm of Wick Bros. & Co., who are creditors in this case. Caleb B. Wick, the appraiser, is not shown to have any interest in this firm or their claim. The only ground upon which it is claimed that he is not a disinterested freeholder is that he is related in the degree above stated. It further appears from affidavits that John C. Neilson, the other appraiser, was not at the time he acted in that capacity in the employ of C. H. Andrews, a creditor in this case. The question is therefore presented to the court whether the fact that Caleb B. Wick was a distant relative of some of the creditors disqualified him to act as an appraiser. Various cases have been cited, in which, under the statutes of other states, an appraiser related to some of the parties in the case has been held to be disqualified; but in all these cases the relationship existed as to parties who were more directly and more extensively interested in the result of the sale. In this case the interest of the creditors with whom these appraisers are connected by relationship or business is so small a portion of the aggregate claims of over $1,000,000 that it would be straining the application of the statute to hold that for such reason these appraisers were disqualified to act. The court, being entirely satisfied that the appraisal was just and fair, and that the property sold for a full and satisfactory consideration, claims the right and privilege to look to the result reached; and, if that is satisfactory, and the court is persuaded that upon the whole proceedings the sale should be confirmed, it will not subject the parties interested to the delay or expense of a resale because of any such technical objection.

Another exception urged goes to the irregularity of the sale, because the decree expressly required that the property should be appraised and sold in connection with pending and unfinished contracts of the receiver, and that such contracts were of great value, in addition to the tangible property itself; and that the master commissioner and appraisers improperly ignored that provision of the decree, and did not include in their appraisals the value of such contracts. By an examination of the decree it will be found that the court ordered the master commissioner "to cause the real and personal property herein described, except materials and supplies, and products manufactured or in process of manufacture, to be appraised, advertised, and sold," etc.; and, by another provision of the decree, it was ordered "that the receiver herein be, and he is hereby, empowered to sell at private sale all the materials and supplies and product manufactured, or in process of manufacture, in his hands, for such reasonable price, and at such time, as in his discretion he should deem best." This was a plain direction to the master to appraise only the property described in the decree. This property con-

sisted of real estate and personal property therein described, but did not include pending contracts between the receiver and purchasers of material, or parties to contracts for the delivery of ore or other products used by the receiver in the mills. It is further clear that, by the provisions of said decree, this court has full control to direct the receiver in such sales as he may hereafter make of manufactured products in his hands to sell such interest as he may have in pending contracts which will be of value, and add to the sum to be distributed to the creditors in this case.

Another objection to such sale is stated to be that the receiver, before said sale, under the instructions of the court, gave notice that any purchaser of the property then offered for sale would have the right to buy from the receiver certain real estate purchased from and conveyed to him by Arms, Bell & Co., on notice to the receiver of an election to buy; and after the accepted bid of said purchasers they did notify the receiver of their election to buy such real estate. This refers to real estate that had been purchased by the receiver, under orders of the court, from time to time during his receivership. This real estate comprised small parcels that were offered to the receiver from time to time by parties who owned them, because they were more valuable to the plant operated by the receiver than they were to the owners. It seemed to the court at the time the orders were made to be of advantage to the receiver and the creditors that such property should be purchased, and in every case it was done with the consent of the creditors, and at their request. The title to such property was vested in the receiver for the benefit of creditors. It was not included in the property described in the decree, which the master commissioner was ordered to sell, and was not therefore appraised as a part thereof. It appeared to the court fair and just to whoever might become the purchasers of the property, as well as to the interest of the creditors, that the purchaser should have the privilege of buying this property from the receiver at the price paid therefor. The receiver was therefore authorized to make such announcement at the sale. It did not in any way relate to the property described in the decree, and ordered therein to be sold, could not affect the regularity of the sale, and is a matter fairly within the discretion of the court.

It is further objected that the property sold for a grossly inadequate price, as shown by the report of the receiver. Under this objection, it is claimed that, when the receiver took possession of this property, he made an inventory thereof, and returned the same into the court. From this report it appears that the property was valued at a sum considerably greater than that fixed by the appraisers under the order of sale now under consideration. But it must be remembered that this plant has been operated by the receiver for nearly eight years. During that time he has been authorized to keep the property in repair, but he has not been permitted to expend any considerable sum in the purchase of new machinery. It is a matter within the knowledge of all that during the past eight years there have been many changes and improvements in machinery in such mills. While the property has been preserved in

good repair, the mill is not now equipped with the most approved and valuable machinery. There has been likewise a general depreciation of such property throughout the country. The appraisers undoubtedly considered all these circumstances. The court is satisfied, from the qualifications of these appraisers, their knowledge of mill machinery, and their familiarity with the value of such property, that the same was appraised, as before stated, at a fair price, and sold for a reasonable sum. The price can certainly not be claimed as inadequate. No affidavits have been filed by persons qualified to judge, claiming that the same was sold for an inadequate price. No offer is now made to advance the bid, and no misconduct is alleged on the part of the purchasers. The exception is based entirely upon the difference between the appraised value and the value as inventoried by the receiver, as above stated; and, for the reasons stated, this is not sufficient to show inadequacy of price.

The tenth exception is that the five coal leases in the name of Ralph J. Wick, trustee, cannot now be legally sold and conveyed, because said Wick is not a party hereto, and said property is out of the territorial jurisdiction. It is now too late to entertain the objection that Wick, as trustee, is not a party to this case even if it be true. The leaseholds are personal property, and are described in the decree as the property of the defendant, and were properly appraised, advertised, and sold as part of the personalty, and within the jurisdiction of the court. If there should be any contention hereafter between Wick, trustee, and the purchasers as to the title to these leaseholds acquired by this sale, because of the alleged failure to make him a party thereto, such contention can be settled elsewhere. It is no reason for setting aside this sale.

In thus finally disposing of this protracted litigation, it seems proper, and due to my predecessor and his associates, the circuit judges who have aided him in the management of this vast property, to direct attention to the satisfactory results that have followed its seizure and operation. The property has not only been preserved intact for the protection of creditors, but, by the wise management of the receiver and his principal agents and officers, under the general direction of the court, a fund of over $700,000 has been accumulated, so that, after long and expensive proceedings, it seems assured that every creditor will be paid the principal sum due him in full. But for the appointment of a receiver, the property would have been dissipated, and largely wasted in hostile litigation, to the prejudice of all concerned. It is not often that such beneficial results follow such long litigation, and it is proper subject of congratulation to all concerned.

JACKSON, J., concurs in this opinion.